Robert Kent GWATNEY *v.* STATE of Arkansas

CA CR 00-908 57 S.W.3d 247

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered October 31, 2001

*Lea Ellen Fowler*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

J OHN F. STROUD, JR., Chief Judge. Robert Gwatney was convicted in a bench trial of possession of drug paraphernalia, for which he was sentenced to three years' probation, ninety days in the county jail, and was assessed a $500 fine and court costs. Gwatney now appeals, arguing that the evidence is insufficient to support the verdict and that the trial court erred in refusing to grant his motion for a continuance. We reverse and dismiss on appellant's first point of appeal.

At trial, Officer Kim Francisco, the only witness for the State, testified that on December 29, 1998, she received information from a confidential informant that appellant lived at 21304 Nebraska in North Little Rock and was in possession of a large quantity of methamphetamine at that address. Officer Francisco and other officers proceeded to that address without a search warrant. When they arrived, Karen Bittinger, a resident of the house, answered the door. Officer Francisco told her why they were there and asked if appellant was at the house; Bittinger said that he was not there. Officer Francisco then asked if they could search the house, to which Bittinger agreed.

When the officers entered the first bedroom off the living room area, they found appellant, wearing only a pair of shorts. Officer Francisco testified that a sock containing a spoon with methamphetamine residue on it, a cotton ball, and two syringes were found in a large chest in the bedroom. She did not remember if the top of the chest was open or closed, but she did say that it was not locked. Officer Francisco was unable to lift any latent prints off the spoon.

For the defense, Jerry Bittinger, Karen Bittinger's father, testified that he owned the house at 21304 Nebraska at the time in question, and although appellant was Karen's boyfriend and sometimes spent the night with her at that house, he did not live there. He said that "literally dozens" of people had access to the house, including himself, as he split his time between that house and another house on Lake Conway. He said that the bedroom in which the paraphernalia was found was not his bedroom but Karen's room.

Karen Bittinger testified that appellant was her "on and off again" boyfriend and even though he stayed with her several nights a week, he did not live with her. She said that she told the police appellant was not at the house when they asked because she was scared and was not sure if he was there or not. She acknowledged that the police found appellant in her bedroom, but she said that the officers told her that they had located the paraphernalia in the ceiling, not in the chest to which Officer Francisco testified. Bittinger said that the chest in the bedroom was hers; it had been there for about a week before officers searched the house; it had belonged to one of appellant's acquaintances; and they had retrieved it from storage. Bittinger said that the contents of the chest had not been searched; she knew it had blankets in it, but she had not taken them out of the chest before the officers performed their search. She said

that she had not seen the sock when she looked inside the chest, and unless it had been underneath the contents of the chest, that "more than likely" the sock had to have been placed in the chest after she brought it into the house. However, she also testified that she was not aware of appellant placing any items in the chest or in the ceiling. She stated that "lots" of people had access to her room during the time the chest had been in her room. Bittinger denied putting any needles in the chest, and she said that the spoon that tested positive for methamphetamine was not hers, although she did say that it could have come from her kitchen because she had "all kinds" of silverware.

Appellant testified on his own behalf. He said that he did not live with his girlfriend, Karen Bittinger, but he did occasionally spend the night at her house. He said that he believed that the door to the bedroom in which the officers found him was closed before the police entered the room, and that he had been sleeping until the police came. He said that the chest was either at the foot of the bed or against the wall. He explained that the chest had belonged to a girl named Tracy, and he had rented her a storage unit for her belongings when she "lost her place." Appellant stated that he knew he and Tracy had access to the storage unit, but he did not know who else had access. When the storage fees were not paid, appellant retrieved all of the items in the unit and took them to Karen Bittinger's house. He said that Bittinger and her family went through the things and picked out what items they wanted to keep. He claimed that he "had no idea" what was in the chest and had made no attempt to determine what was in it. Appellant also testified that the officers found a bag of needles in the ceiling; he said that he did not see the police recover any items out of the chest. He denied that any of the items found by the officers belonged to him.

At the close of the State's case and again at the close of all the evidence, appellant made a motion to dismiss, arguing that the State had failed to prove that appellant knew or should have known that the items of contraband were in the chest or that he had any control over such items, and that numerous people other than appellant had access to the residence. Both motions were denied by the trial court.

When the sufficiency of the evidence is challenged, the appellate court considers only that evidence which supports the guilty verdict, and the test is whether there is substantial evidence to support the verdict. *Blockman v. State*, 69 Ark. App. 192, 11 S.W.3d

562 (2000). Substantial evidence is evidence of such certainty and precision as to compel a conclusion one way or another. *Id.* There is no distinction between circumstantial and direct evidence in a review for sufficiency; however, for circumstantial evidence to be sufficient, it must exclude every other reasonable hypothesis consistent with innocence. *Mayo v. State*, 70 Ark. App. 453, 20 S.W.3d 419 (2000). While the issue of sufficient evidence is dependent upon the facts of the particular case, the issue is one of law. *Id.*

 Actual or physical possession is not required to prove guilt of possession of drug paraphernalia, *Jacobs v. State*, 317 Ark. 454, 878 S.W.2d 734 (1994); constructive possession, which is control or right to control the contraband, is sufficient. *Franklin v. State*, 60 Ark. App. 198, 962 S.W.2d 370 (1998). In *Mayo, supra*, this court stated:

> Constructive possession may be implied where the contraband is found in a place immediately and exclusively accessible to the defendant and subject to his control. Where there is joint occupancy of the premises where the contraband is seized, some additional factor must be found to link the accused to the contraband. In such instances, the State must prove that the accused exercised care, control, and management over the contraband and also that the accused knew that the matter possessed was contraband.

70 Ark. App. at 456, 20 S.W.3d at 421 (citations omitted).

Appellant contends that *Williams v. State*, 289 Ark. 443, 711 S.W.2d 825 (1986), supports his position. However, *Williams* was overruled by *Plotts v. State*, 297 Ark. 66, 759 S.W.2d 793 (1988). Furthermore, that case concerned the possession of marijuana in a vehicle, and this court, in *Mayo, supra*, stated that it was "not persuaded that cases involving the possession of contraband in automobiles are fully applicable to cases involving homes or apartments." 70 Ark. App. at 457, 20 S.W.3d at 422. Nevertheless, we find merit in appellant's argument.

 We must analyze the present case under the requirements of joint occupancy set forth in *Mayo*, as it was clearly established at trial that appellant was not the only individual who had access to the bedroom in which the paraphernalia was found; that it was the bedroom of his girlfriend, Karen. To prove constructive possession of contraband in premises where there is joint occupancy, the State

is required to prove that appellant exercised care, control, and management over the contraband and also that the accused knew that the matter possessed was contraband. *Mayo, supra.*

■ In the present case, although the trial judge indicated that he did not believe that appellant had never opened the chest, the State did not provide any evidence that appellant exercised care, control, or management over the contraband that was found in the chest. It is not known if the top to the chest was open or closed, and Officer Francisco testified that there were no prints taken from the spoon that contained methamphetamine residue. No drug paraphernalia was found on appellant. Although appellant had been the person who initially brought the chest to the residence, the testimony was that Karen Bittinger was the person who had determined that she wanted the chest in her room. Furthermore, the chest had been in her room for at least a week, and there was testimony that "lots" of people had access to that room during the time the chest was there. Even viewing these facts in the light most favorable to the State, there is only speculation and conjecture that appellant exercised care, control or management over the paraphernalia found in the chest, which is not sufficient. Certainly the paraphernalia was not found in a place immediately and exclusively accessible to appellant to allow the implication of constructive possession. Furthermore, this is at best a constructive-possession case of premises jointly occupied, which requires some additional factor to link the accused to the contraband, and we do not find proof of such additional factor. For these reasons, we must reverse and dismiss appellant's conviction for possession of drug paraphernalia.

Appellant also contends that the trial court erred in denying his motion for a continuance. Because we reverse and dismiss the case based upon insufficiency of the evidence, it is not necessary to address this issue.

Reversed and dismissed.

HART, BIRD, GRIFFEN, and CRABTREE, JJ., agree.

JENNINGS, J., dissents.

JOHN E. JENNINGS, Judge, dissenting. I cannot agree with the majority's decision that the evidence in this case is insufficient as a matter of law, although in fairness I must concede that the case is close.

We have not considered the evidence in the light most favorable to the judge's decision, but rather we have weighed it against other conflicting proof that is favorable to the accused. This is precisely what we are not to do under decisions of the supreme court, which are binding upon us. *Hendrickson v. State*, 316 Ark. 182, 871 S.W.2d 362 (1994); *Coleman v. State*, 314 Ark. 143, 860 S.W.2d 747 (1993); *Ricketts v. State*, 292 Ark. 256, 729 S.W.2d 400 (1987); *Westbrook v. State*, 286 Ark. 192, 691 S.W.2d 123 (1985).

I agree that this is clearly a joint-occupancy case. The appellant himself gave this address as his residence to the arresting officer. Whether the majority believes the testimony of Ms. Bittinger, her father, and the appellant that he did not really live there but just stayed there from time to time is irrelevant for our purposes. The pertinent facts are that appellant was found alone on a bed in a bedroom within a few feet of a chest that contained drug paraphernalia.

In order to prove that a defendant is in possession of a controlled substance, constructive possession is sufficient. *Osborne v. State*, 278 Ark. 45, 643 S.W.2d 251 (1982). Neither exclusive nor physical possession is necessary to sustain a charge if the place where the offending substance is found is under the dominion and control of the accused. *Crossley v. State*, 304 Ark. 378, 802 S.W.2d 459 (1991). The State need not prove that the accused had actual possession of the contraband. *Embry v. State*, 302 Ark. 608, 792 S.W.2d 318 (1990). Constructive possession can be implied when the controlled substance is in the joint control of the accused or another, although joint occupancy is not sufficent in itself to establish possession or joint possession. *Hendrickson, v. State, supra*. There must be some additional factor linking the accused to the contraband. *Littlepage v. State*, 314 Ark. 361, 863 S.W.2d 276 (1993). The State must show additional facts and circumstances indicating the accused's knowledge and control of the contraband. *Bailey v. State*, 307 Ark. 448, 821 S.W.2d 28 (1991). Constructive possession can be implied where the contraband is found in a place immediately and exclusively accessible to the accused and subject to his control. *Crossley v. State, supra*. Such control and knowledge may be inferred from the circumstances where there are additional factors linking the accused to the contraband. *Nichols v. State*, 306 Ark. 417, 815 S.W.2d 382 (1991); *Mosley v. State*, 40 Ark. App. 154, 844 S.W.2d 378 (1992).

In the case at bar the appellant testified that he had moved the chest in which the drug paraphernalia was found into the residence.

When that testimony is coupled with the evidence that this was appellant's residence and that he was found alone, in very close proximity to the contraband, I am unwilling to say that the evidence of constructive possession is insufficient as a matter of law. Of course, his knowledge of the contraband is a matter of inference but on these facts, the inference seems permissible. Cf. *Mosley v. State, supra.* After reading the opinion of the majority I cannot help but believe that they have found credible the testimony of the appellant, his girlfriend, and her father. This was the trial court's function, which I fear we inadvertently usurp.

I respectfully dissent.